IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RICHARD WILCOX,
RICHARD D. MORRIS, and
DEWEY STEVENSON,
on behalf of themselves and
all others similarly situated,

                                    Case No. 3:09-CV-659

                Plaintiffs,

    vs.

ALTERNATIVE ENTERTAINMENT, INC. and
THOMAS BURGESS

                Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PETITION
FOR CLASS COUNSEL'S COSTS AND ATTORNEYS' FEES**

**INTRODUCTION**

This is a hybrid action alleging wage and hour claims as a collective action under Sec. 216(b) of the Fair Labor Standards Act ("FLSA") and a Rule 23 class action under the wage and hour laws of the states of Wisconsin and Michigan. This action is also a Rule 23 class action under Wisconsin and Michigan law for alleged unlawful deductions from wages. The parties have been engaged in this litigation since October 29, 2009 and have reached a settlement of all state and federal wage and hour claims and all state wage deduction claims on behalf of approximately 2000 former and current employees of AEI who held the position of Technician or Installer.

This case settled for a total of $2.33 million. Class Counsel accepted the case on a 33.33% contingency basis, exclusive of costs, bearing the entire risk in the event that there was no recovery. Class Counsel seek attorneys' fees in the amount of $776,666.67,

inclusive of costs, or 1/3 of the $2.33 million common fund. Class Counsel invested more than 1700 hours in prosecuting this litigation. Class Counsel agreed to be responsible for all costs in the event of an adverse result. Class Counsel faced significant risks in this litigation, based upon defenses asserted by Defendant as well as the risks incident to obtaining class certification.

Class Counsel respectfully requests that the Court award costs and fees in the amount of $776,666.67. A contingency fee of 33.33% is consistent with the percentage permitted in other common fund settlements, is consistent with market rates for this geographic area, and recognizes the risks assumed by class counsel in litigating this matter.

## STATEMENT OF FACTS

On October 29, 2009, Plaintiff Richard Wilcox filed the present action, alleging violation of the FLSA on behalf of himself and similarly situated current and former satellite installers who were employed at AEI. The Original Complaint also alleged a violation of Wisconsin wage and hour law on behalf of Wilcox and a class of similarly situated current and former satellite installers employed by AEI. On December 22, 2009, Wilcox filed his First Amended Complaint adding a Wisconsin State law claim for illegal wage deductions under Wis. Stat. §103.455. Plaintiff subsequently amended his complaint to add Richard Morris as a party plaintiff. The Third Amended Complaint, which was filed with the Court at the time the parties filed their joint motion for preliminary approval of the settlement, adds claims under Michigan law for alleged wage and hour violations and alleged improper wage deductions, and adds Thomas Burgess as a party Defendant.

Each of the Plaintiffs, on behalf of himself and the putative class members, has executed a fee agreement retaining Hawks Quindel, S.C., Gingras, Cates & Luebke and/or Axley Brynelson, LLP as Class Counsel.  (Parsons Dec., ¶ 6); (Gingras Dec., ¶ 6); (Modl Dec., ¶ 6).  Attorney William Parsons served as lead counsel on this matter on the federal and state wage and hour claims, and attorneys Robert Gingras and Michael Modl served as co-lead counsel on the wage deduction claims.  (Parsons Dec., ¶10); (Gingras Dec., ¶ 10); (Modl Dec., ¶ 10).  Attorneys Parsons, Gingras and Modl supervised the efforts of other attorneys and legal professionals in their respective offices.  (Parsons Dec., ¶ 10); (Gingras Dec., ¶ 10); (Modl Dec., ¶ 10).  Additionally, John Mitby oversaw a number of critical issues in the case, including mediation, settlement discussions and overall strategy.  (Modl Dec. ¶ 11).

Pursuant to the fee agreements, Class Counsel agreed to assume the risk for all actual costs in the litigation in the event Plaintiffs were unsuccessful.  (Parsons Dec., ¶ 8); (Gingras Dec., ¶ 8); (Modl Dec., ¶ 8).  In light of this risk, and the significant undertaking implicit in this class action lawsuit, Plaintiffs agreed to a payment of 33.33% of the gross recovery if this matter was resolved through settlement.  (Parsons Dec., ¶ 7); (Gingras Dec., ¶ 7); (Modl Dec., ¶ 7).  Class Counsel request a combined fees and costs award of 33.33% of the common settlement fund.  Under the terms of the fee agreements, Class Counsel are entitled to attorneys' fees in the amount of 33.33% *plus actual costs*. (Parsons Dec., ¶ 9); (Gingras Dec., ¶ 9); (Modl Dec., ¶ 9).  Instead of requesting a separate award of actual costs, however, Class Counsel ask that their costs be absorbed into the combined 33.33% fees and costs request.  (Parsons Dec., ¶ 9); (Gingras Dec., ¶ 9); (Modl Dec., ¶ 9). (Modl Dec., ¶ 9).

3

As part of their fee Petition, Class Counsel have submitted declarations from lead counsel Parsons, Gingras, and Modl, three experienced attorneys in employment law, including wage and hour law, class action work, and federal court practice. Additionally, Class Counsel have submitted declarations from attorneys in the legal community who regularly litigate wage-and-hour cases in Wisconsin before this Court and who are familiar with the market rate for attorneys' fees in such cases. These practitioners, as well as lead Class Counsel, have averred in their respective declarations that an award of 33.33% for attorneys' fees and costs is consistent with the appropriate market rate for similar FLSA actions in the Western District of Wisconsin. (Parsons Dec., ¶ 29); (Gingras Dec., ¶ 29); (Modl Dec., ¶ 30); Johnson Dec., ¶ 6); (Urban Dec., ¶ 7); (Phebus Dec., ¶ 8).

In April, 2010 the parties agreed to meet, for the purpose of settlement discussions, in an effort to resolve this matter. (Parsons Dec., ¶ 13); (Gingras Dec., ¶ 13); (Modl Dec., ¶ 14). Counsel for the parties, as well as representatives from AEI, including owner and President Tom Burgess, met in Madison, WI on April 23, 2010 and discussed settlement. (Parsons Dec., ¶ 13); (Gingras Dec., ¶ 13); (Modl Dec., ¶ 14). During the course of these discussions, Mr. Burgess discussed the financial condition of AEI and its limited resources. (Parsons Dec., ¶ 14); (Gingras Dec., ¶ 14); (Modl Dec., ¶ 15). Additionally, Mr. Burgess advised that, if necessary, he and the company may need to pursue bankruptcy in the event of a large enough judgment in this matter against the company. (Parsons Dec., ¶ 14); (Gingras Dec., ¶ 14); (Modl Dec., ¶ 15).

Counsel for the parties continued to have informal discussions regarding settlement and agreed to mediate this matter on August 6, 2010. (Parsons Dec., ¶ 15);

4

(Gingras Dec., ¶ 15); (Modl Dec., ¶ 16). The parties retained the services of former federal judge, Richard McQuade as the mediator in this matter. The parties mediated for the full day on August 6, 2010, and in the evening successfully reached a resolution. (Parsons Dec., ¶ 16); (Gingras Dec., ¶ 16); (Modl Dec., ¶ 17). At the conclusion of the mediation, Class Counsel and counsel for AEI executed a "rough term sheet" memorializing the primary terms of the settlement agreement. (Parsons Dec., ¶ 16); (Gingras Dec., ¶ 16); (Modl Dec., ¶ 17). The settlement efforts in the case were highly contested, and entirely at arm's-length. (McQuade Dec., ¶ 8) (Parsons Dec., ¶ 17); (Gingras Dec., ¶ 17); (Modl Dec., ¶ 18). The settlement reflects the results of an extensive analysis, through mediation, of both the merits of the Plaintiffs' claims and the strength of AEI's substantive defenses. (McQuade Dec., ¶ 7).

### A. Work Performed By Class Counsel.

Class Counsel and legal professionals associated with Class Counsel have devoted more than 1700 hours on behalf of the Plaintiff classes and have incurred approximately $9,000.00 in costs. (Parsons Dec., ¶ 18); (Gingras Dec., ¶ 18); (Modl Dec., ¶ 19). Class Counsel reasonably anticipate that they will incur an additional $2,000.00 in costs administering the settlement and addressing class members' questions regarding the settlement. (Parsons Dec., ¶ 18); (Gingras Dec., ¶ 18); (Modl Dec., ¶ 19). Counsel for the parties have retained a third-party claims administrator, Rust Consulting, Inc. ("Rust"), to administer the settlement. (Parsons Dec., ¶ 19); (Gingras Dec., ¶ 19); (Modl Dec., ¶ 20). Rust's services will cost approximately $40,000, which will be deducted from the unclaimed portion of the common fund. (Parsons Dec., ¶ 19); (Gingras Dec., ¶ 19); (Modl Dec., ¶ 20).

Class Counsel's legal services have included detailed investigations of potential claims against AEI. This included numerous in-person and telephonic conferences with Plaintiffs and other putative class members. (Parsons Dec., ¶ 20); (Gingras Dec., ¶ 20); (Modl Dec., ¶ 21). The putative class is approximately 2,000 individuals from two states. Class Counsel contacted numerous putative class members to investigate the issues in the case, including non-payment for off-the-clock work activities, alleged improper overtime payment for productive work, non-payment for work provided during scheduled lunch hours, and alleged improper wage deductions. (Parsons Dec., ¶ 20); (Gingras Dec., ¶ 20); (Modl Dec., ¶ 21). Class Counsel spent substantial time and effort researching applicable wage and hour and wage deduction law. (Parsons Dec., ¶ 20); (Gingras Dec., ¶ 20); (Modl Dec., ¶ 21). Class Counsel prepared the Complaint as well as amended pleadings in this matter. (Parsons Dec., ¶ 20); (Gingras Dec., ¶ 20); (Modl Dec., ¶ 21). Class Counsel spent time and effort responding to the Defendant's motion to transfer this matter to the Eastern District of Wisconsin. (Parsons Dec., ¶ 20); (Gingras Dec., ¶ 20); (Modl Dec., ¶ 21).

Class Counsel spent significant time on written discovery and depositions in this matter. (Parsons Dec., ¶ 20); (Gingras Dec., ¶ 20); (Modl Dec., ¶ 21). AEI provided the equivalent of tens of thousands of pages of electronic documents, including numerous spreadsheets relating to the wage and hour and wage deduction claims. Class Counsel spent numerous hours analyzing these spreadsheets and preparing the appropriate damages analysis. (Parsons Dec., ¶ 20); (Gingras Dec., ¶ 20); (Modl Dec., ¶ 21).

Class Counsel also spent significant time and resources proving that Plaintiff classes were suitable for class certification. (Parsons Dec., ¶ 20); (Gingras Dec., ¶ 20);

6

(Modl Dec., ¶ 21). This included reviewing applicable law, reviewing a significant number of documents and spreadsheets and contacting numerous putative class members. (Parsons Dec., ¶ 20); (Gingras Dec., ¶ 20); (Modl Dec., ¶ 21).

Throughout the case, Class Counsel met regularly, discussed the status of pending matters and analyzed strategies to continue to move the case forward. (Parsons Dec., ¶ 21); (Gingras Dec., ¶ 21); (Modl Dec., ¶ 22). Lead counsel for the Plaintiffs delegated appropriate tasks to various team members. (Parsons Dec., ¶ 22); (Gingras Dec., ¶ 22); (Modl Dec., ¶ 23).

Class Counsel's obligations to the class members will continue into the future. (Parsons Dec., ¶ 24); (Gingras Dec., ¶ 24); (Modl Dec., ¶ 25). This will include the need to assist, as appropriate, with settlement administration as well as participation at the final approval hearing. (Parsons Dec., ¶ 24); (Gingras Dec., ¶ 24); (Modl Dec., ¶ 25). Additional fees will be incurred relating to contacts with class members regarding the settlement. (Parsons Dec., ¶ 24); (Gingras Dec., ¶ 24); (Modl Dec., ¶ 25). Assuming that the Settlement Agreement receives preliminary approval, Class Counsel's obligations will continue during the claims process, through the final approval hearing and for several months thereafter dealing with questions and concerns of the class members. (Parsons Dec., ¶ 24); (Gingras Dec., ¶ 24); (Modl Dec., ¶ 25).

## ARGUMENT AND AUTHORITIES

**I.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS CONSISTENT WITH THE REASONABLE MARKET RATE GIVEN THE RISKS OF THIS LITIGATION.**

    **A.     Plaintiffs Are Entitled to Attorneys' Fees and Costs.**

Plaintiffs are entitled to fees in this lawsuit, which was brought as a FLSA collective action and a Rule 23 state wage and hour class action under the laws of Wisconsin and Michigan. This action also includes class claims under Wisconsin and Michigan law for alleged improper wage deductions.

The purpose of Section 216(b) of the FLSA is to ensure "effective access to the judicial process by providing attorneys fees for prevailing plaintiffs with wage and hour grievances." Roofers Local 317 v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 502 (6th Cir. 1984). "Congress intended that the wronged employee should receive his full wages . . . without incurring any expense for legal fees or costs." Id. Consistent with these policies, in an action under the FLSA, the district court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Similarly, attorneys' fees and costs are recoverable under the state wage and hour statutes at issue in this litigation. *See* Cal. Lab. Code § 1194; Mich. Comp. Laws § 408.393 sec. 13(1)(a); Wis. Stat. Plaintiffs also contend that attorneys' fees and costs are recoverable on their Wisconsin wage deduction claim pursuant to Wis. Stat. Chapter 109.

Plaintiffs are the prevailing party in this litigation, and they are entitled to an award of attorneys' fees. A plaintiff "prevails" when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-112 (1992). This relief may come in the form of an enforceable judgment, a consent decree, or a settlement. Id.; *see also* Rule 23(h), Fed. R. Civ. P. ("In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are

8

authorized by law or by the parties' agreement."). Here, Plaintiffs have secured substantial relief, as evidenced by the terms of the proposed Settlement Agreement. Accordingly, Plaintiffs are the prevailing party and are entitled to an award of attorneys' fees and costs under the FLSA and applicable state law.

### B. Class Counsel's Request for Fees Is Reasonable.

This court has broad discretion in deciding whether a requested fee is reasonable in the class action context. 7B Alan Wright et al., Federal Practice and Procedure: Federal Rules of Civil Procedure, § 1803.1 (3d ed. & 2008 Supp.). In the Seventh Circuit, "common fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund." Florin v. Nationsbank of Georgia, 34 F.3d 560, 564 (7th Cir. 1994) ("Florin I"). In fact, "when a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." Florin I, 43 F.3d at 563. The court then determines the amount of attorney' fees that plaintiff's counsel may recover from this fund. Id. The common fund doctrine is based on the notion that "all those who have benefitted from the litigation should share its costs.'" Florin I, 43 F.3d at 563 (citation omitted)

The Seventh Circuit uses a "market-based approach" to set the percentage of the total settlement, from the common fund, to be awarded as reasonable attorney's fees. Under this approach, the district court "is required to estimate the terms of a contract [that] private plaintiffs would have negotiated with the attorneys at the outset of the case, with reference to benchmarks, such as the actual agreements between the class members and their attorneys, data from other suits, and auctions for legal services." 7B Charles

9

Alan Wright et al., Federal Practice and Procedure: Federal Rules of Civil Procedure, § 1803.1 (3d ed. & 2008 Supp.). In applying this framework, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." Steinlauf v. Continental Illinois Corp., 962 F.2d 566, 568 (7th Cir. 1992). The "touchstone of the analysis" is what paying clients would have compensated the attorneys in an open market for legal services: "The object in awarding a reasonable attorney's fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." Steinlauf at 962 F.2d at 572. Ultimately, "Class Counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." Steinlauf at 962 F.2d at 572-73 (noting that "in personal injury suits the usual range for contingent fees is between 33 and 50 percent . . ."). This can be proven through "testimony or statistics concerning the fee arrangements in commercial litigation comparable to the present suit." Id.

The Seventh Circuit Court of Appeals emphasized the necessity of determining the market rate for attorney fees in class-action common-fund cases in In re Synthroid Marketing Litigation, 264 F.3d 712 (7th Cir. 2001) (Synthroid I). Synthroid I was a class action suit brought by consumers and health insurers against a pharmaceutical company asserting various claims relating to misrepresentations the manufacturer made about the drug. The defendant agreed to pay the consumer class $88 million and $46 million to the insurer class. The district court approved the settlement but awarded fees "at a level significantly below what the lawyers had requested." Id. at 715. The district court

10

reasoned that the large settlement created a "megafund" and that each class' attorneys was entitled only to 10% of the settlement. Id. at 717.

The Seventh Circuit reversed. "We have held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." Id. at 718 (emphasis added)(citations omitted). Ultimately, "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." Id. at 721. The fee award must be made with "reference to arrangements that satisfy willing buyers and sellers rather than the compensation that a judge thinks appropriate as a matter of first principle." In re Synthroid Marketing Litigation, 325 F.3d 974, 976 (7th Cir. 2003) (Synthroid II). In applying this standard, the judge is *not* required to "monitor how many hours the lawyers prudently devoted to the case. The client cares about the outcome alone." In re Synthroid at 325 F.3d at 979-980.

Four years later, the Seventh Circuit re-affirmed its commitment to the market analysis for awarding attorney fees in Taubenfeld v. AON Corporation, 415 F.3d 597 (7th Cir. 2005). There, a single class member objected to a settlement agreement in a securities fraud class action lawsuit, which awarded plaintiffs' Counsel 33.3% of the total settlement as attorney's fees. Id. at 598. The class member argued that the district court relied solely on the "benchmarks" set forth in the Synthroid cases and failed to consider case specific factors, such as the risk involved and amount of recovery. Id. at 599. The Seventh Circuit Court of Appeals affirmed the district court because the objecting class

11

member failed to articulate why the fee award was not an accurate reflection of the market rate for attorney fees in this type of litigation. Id. (citations omitted). The court concluded that the district court properly applied the market rate standard when approving the settlement agreement and fee award. "[L]ead Counsel's memorandum to the district court in support of its application for fees and expenses contained an analysis of the strength of the class' case, data on fees awarded in other class actions in the jurisdiction, and evidence of the quality of legal services rendered—the same type of evidence needed to mimic the market per Synthroid." Id. at 600.

Recently, the Seventh Circuit rejected a district court fee award that gave undue weight to the degree of success "without factoring the value that the market would have placed on Counsel's legal services had its fee been arranged at the outset." Sutton v. Bernard, 504 F.3d 688, 694 (7th Cir. 2007). The court again emphasized that "[i]n deciding fee levels in common fund cases, we have consistently directed district courts to do their best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" Id. at 692 (quoting Synthroid I, 264 F.3d at 718). Furthermore, the district court erred in refusing to consider the risk of nonpayment faced by plaintiffs' counsel:

> "We have said that the market price for legal fees 'depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.'"

Id. at 693 (citation omitted).

In Continental Securities Litigation v. Continental Illinois Corp., 962 F.2d 566 (7th Cir. 1992), the Seventh Circuit criticized the loadstar method and recommended the

12

percentage method in an action involving a class counsel fee request. The court observed:

> "The judicial task might be simplified if the judge and the lawyers bent their efforts on finding out what the market pays not for individual hours but for the ensemble of services rendered in a case of this character. Class Counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis with a similar outcome, for a paying client."

Continental Securities, 962 F.2d at 572.

The United States District Court for the Western District of Wisconsin recently applied Seventh Circuit precedent and approved a fee request in a wage and hour action. Goodell, et al. v. Charter Communications, LLC, et al., Case No. 08-CV-512, (W.D. Wis. August 17, 2010). Judge Crabb, in her fee petition decision in *Goodell*, observed, "the Court of Appeals for the Seventh Circuit has held in a number of cases that when common funds are involved, the district courts determine a reasonable fee to be paid out of the common fund, and in doing so, considers the value the marketplace would have assigned to the case at the outset. E.g., *Sutton v. Bernard*, 504 F.3d. 688, 692, 693 (7th Cir. 2007). It does not undertake an assessment of the fees sought in relation to the results obtained." Id. at 3. The Court concluded, "…the only evidence is what plaintiffs have submitted, which is that class action fee arrangements with well qualified counsel, such as plaintiffs' counsel in this case, are rarely set lower than one-third of the recovery." Id at 3-4.

As these decisions indicate, the market-method for determining attorney fees should apply in all class action settlements involving a common fund, even when fees are awarded pursuant to a fee-shifting statute. *See* People Who Care v. Rockford Bd. of Educ., School Dist., 272 F.3d 936, 938 (7th Cir. 2001) (characterizing its "'market

13

mimicking' approach" as "orthodox in the circuit, [for] computing the fee award."). While the court will give significant weight to the contingency percentage set forth in a fee agreement between the parties and Class Counsel, counsel should be prepared to submit evidence relating to the percentage fees awarded in like cases, and other evidence demonstrating the percentage set forth in the fee agreement is consistent with the market rate for legal services in similar cases.  See Id.

"Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007).  In addition, according to a Federal Judicial Center study of more than 600 class actions released in 2005, an award of 29% for attorneys' fees and costs was "typical". Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation* 52 (2005).  These studies are confirmed by fee awards in similar, nationwide class action employment lawsuits, including those brought pursuant to 29 U.S.C. § 216(b).  See Lenahan v. Sears, Roebuck and Co., 2006 WL 2085282 at * 21 (D.N.J. 2006) (noting that 30% of common fund is regularly awarded in labor and employment class action litigation); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 188 (W.D. N.Y. 2005) (awarding 38.26% of total settlement in common fund case under FLSA); Lepinske v. Mercedes Homes, Inc., 2008 WL 2694111 at *4 (M.D. Fla. 2008) (approving award of 33.33% of common fund settlement in FLSA case, pending objections); Gilliam v. Addicts Rehabilitation Center Fund, 2008 WL 782596 at *6 (S.D.N.Y. 2008) (33.33% award "consistent with norms of class litigation"); Romero v. Producers Dairy Foods, 2007 WL 3492841 (E.D. Cal. 2007) (accord); Camp v.

Progressive Corp. 2004 WL 2149079 at *22 (E.D. La. 2004) (awarding 29.62% of common fund in FLSA class action); Kidrick v. ABC Television & Appliance Rental, 1999 WL 1027050 at *1 (N.D. W. Va. 1999) (awarding 30.6%).

In the instant case, Class Counsel seek an award of attorneys' fees and costs that is consistent with what a willing client would agree to pay an attorney to take this type of case at the inception of the representation. Specifically, Class Counsel seek an award of fees and costs that represents thirty-three and one third percent (33.33%) of the $2.33 million common fund. This request is supported by the underlying fee agreements, in which Plaintiffs agreed to pay Class Counsel thirty-three and one third percent (33.33%) of the total amount of any recovery, plus actual costs. As clearly set forth in the accompanying Declarations of Attorneys William Parsons, Robert Gingras, Michael Modl, Larry Johnson, Jay Urban and Douglas Phebus, this percentage is consistent with the market rate for legal services in similar, complex litigation in the Dane County Wisconsin area.

There are other compelling factors that support the relief requested in this petition. This case yielded a favorable result for class members, who will recover more than $1,100.00 per class member on average. More importantly, this result followed in the face of substantial risk. By definition, complex nationwide class-action litigation is a risky venture. *See* White v. Sundstran Corp., 256 F.3d 580, 586 (7th Cir. 2001)(" . . . attorneys already supply risk-bearing services in class actions. They invest legal time on contingent fee, taking the risk of failure in exchange for a premium award if the class prevails."). Many cases are decided (and dismissed) at the certification (or decertification) stage given the exacting standard of proof presented by Rule 23 and 29

U.S.C. § 216(b). *See* e.g., Mooney v. Aramco Services Co., 54 F.3d 1207, 1214 (5th Cir. 1995); In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.2d 283, 283, 321 (3d Cir. 1998)(noting inherent risk of decertification in class action litigation). Setting aside the attorney manpower involved, the cost of litigating a lawsuit of this magnitude is substantial. All of these risks (and costs) were incurred in the face of the distinct possibility that this lawsuit might not succeed. This high-risk factor also justifies the percentage of recovery sought in this petition.

The present case involved a number of significant risks. As with other large wage and hour and wage deduction class actions, there were a number of defenses to the substantive claims. Similarly, there were a number of defenses to the Wisconsin and Michigan wage deduction claims. The substantive claims, including the state law wage deduction claims, presented potential class certification challenges.

Finally, the requested fees are reasonable because of Class Counsel's expertise in complex federal court litigation and the substantial time spent working on this case. As fully explained in the accompanying Declarations, Class Counsel spent more than 1700 hours working on this case. Class Counsel exhaustively researched the substantive law, investigated claims, reviewed documents, prepared pleadings, drafted and responded to motions, engaged in discovery, and drafted or reviewed all of the appropriate documents necessary to carry out the settlement. These related activities, driven by competent federal court practitioners, have led to excellent results in a risky case.

The fact that this case settled prior to certification does not change the analysis. Commentators have noted that "one purpose of the percentage method" of awarding fees "is to encourage early settlements by not penalizing efficient counsel . . ." 3 Herbert B.

16

Newberg & Alba Conte, Newberg on Class Actions § 1403, at 14-3 to 14-7 (3d ed. 1992). For this reason, "[p]rocuring a settlement, in and of itself, is *never* a factor that the district court should rely upon to reduce a fee award. To utilize such a factor would penalize efficient counsel, encourage costly litigation and potentially discourage able lawyers from taking such cases." Gunter v. Ridgewood Energy Co., 223 F.3d 190, 198 (3d Cir. 2000)(emphasis supplied).

In summary, the market rate for representation of similar litigation, at the "front end," is exactly what Class Counsel bargained for in the instant case. This result is consistent with the excellent results achieved for the class members, along with the substantial risk that Class Counsel faced as it worked towards that result. This result is also consistent with similar fee awards in other wage and overtime cases throughout the country, along with the standard fee in the prevailing market. For these reasons, Class Counsel respectfully request that this Court enter an appropriate order awarding Class Counsel thirty-three and one third percent (33.33%) of the common fund, or $776,666,.67, as a reasonable award of attorneys' fees and costs.

### C. Class Counsel's Request for Costs Is Reasonable.

In addition to attorneys' fees, Class Counsel is entitled to reimbursement of its costs pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §1920, Fed. R. Civ. P. 54, and applicable state law. Plaintiffs have incurred costs to date in the amount of more than $9,000.00, and will incur additional costs in administering the distribution of settlement proceeds. These costs were necessary to protect and advance the interests of class members. As stated above, under the terms of the fee agreements, Class Counsel are entitled to request attorneys' fees of 33.33% *plus actual costs*. Instead of requesting a separate award of

17

actual costs, however, Class Counsel ask that their costs be absorbed into the combined 33.33% fees and costs request. Accordingly, Class Counsel's combined request of fees and costs will not exceed 33.33% of the common settlement fund. The Court should accordingly award Class Counsel these reasonable and necessary costs.

## CONCLUSION

On the basis of the argument and authority set forth above, the supporting declarations and the record in this matter, Plaintiffs respectfully request that this Court award those costs and attorneys' fees requested in Plaintiffs' Petition for Class Counsel's Costs and Attorneys' Fees.

Respectfully submitted this 6th day of October, 2010.

**HAWKS QUINDEL, S.C.**

By: /s/ William E. Parsons
William E. Parsons, State Bar No. 1048594
Email: wparsons@hq-law.com
David C. Zoeller, State Bar No. 1052017
Email: dzoeller@hq-law.com
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608/257-0040
Facsimile: 608/256-0236

**AXLEY BRYNELSON, LLP**

By: /s/ Michael J. Modl
Michael J. Modl, State Bar No. 1011419
Email: mmodl@axley.com
Timothy D. Edwards, State Bar No. 1036836
Email: tedwards@axley.com
Steven M. Streck, State Bar No. 1013070
Email: sstreck@axley.com
Post Office Box 1767
Madison, Wisconsin 53701-1767

Telephone: 608/257-5661
Facsimile: 608/257-5444

**GINGRAS, CATES & LUEBKE**

By: */s/ Robert J. Gingras*
Robert J. Gingras, State Bar No. 1002909
Email: gingras@gcllawyers.com
Michael J. Luebke, State Bar No. 1010307
Email: luebke@gcllawyers.com
Heath P. Straka, State Bar No. 1031351
Email: straka@gcllawyers.com
8150 Excelsior Drive
Madison, Wisconsin 53717-1904
Telephone: 608/833-2632
Facsimile: 608/257-5444

**CERTIFICATE OF SERVICE**

I, Lyndsey Parent, certify that on October 6, 2010, the undersigned electronically filed the following documents with the Clerk of Courts, US District Court, Western District of Wisconsin, through the Court's ECF system, which will send notice via electronic filing to all counsel of record:

1. Petition for Class Counsel's Costs and Attorneys' Fees.

2. Memorandum of Law in Support of Petition for Class Counsel's and Attorneys' Fees.

3. Declaration of Michael J. Modl.

4. Declaration of William Parsons.

5. Declaration of Robert Gingras.

6. Declaration of Douglas J. Phebus.

7. Declaration of Richard B. McQuade, Jr.

8. Declaration of Larry Johnson.

9. Declaration of Jay Urban.

        */s/ Lyndsey M. Parent*
        Lyndsey M. Parent
        Legal Assistant