IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RICHARD WILCOX,
RICHARD D. MORRIS and
DEWEY STEVENSON,
on behalf of themselves and
all others similarly situated,

                                    Case No. 3:09-CV-659

                 Plaintiffs,

     vs.

ALTERNATIVE ENTERTAINMENT, INC,

             Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND JOINT STIPULATION FOR CLASS CERTIFICATION

## <u>INTRODUCTION</u>

The parties have jointly moved for preliminary approval of the settlement

reached between the Plaintiffs, the putative classes, and Alternative

Entertainment, Inc.  The settlement provides for a potential total maximum

settlement of $2,330,000.  The settlement is fair and reasonable as it fully and

adequately satisfies this Court's criteria for such settlements. As such, the parties

respectfully request that the Court allow the Plaintiffs to file their Third Amended

Complaint, for settlement purposes only certify the Plaintiffs' proposed classes and

certify class counsel and the Named Plaintiffs as representatives for the classes,

and accept the schedule, notices, and claims administration process proposed by the

parties, including setting a final approval hearing.  In jointly filing this motion with Plaintiffs, Defendant does not waive any defenses or right to later contest certification or concede any facts.

**STATEMENT OF FACTS**

## I.   PROCEDURAL HISTORY

Richard Wilcox filed his class and collective action complaint against Alternative Entertainment, Inc. ("AEI") on October 29, 2009. Dkt.1. His complaint alleged that AEI failed to pay its satellite installation and repair technicians ("technicians") minimum wages and overtime wages in violation of Wisconsin law and the federal Fair Labor Standards Act (FLSA). Dkt.1.

A similar complaint was filed against AEI by Richard Morris on December 17, 2009. Morris v. Alternative Entertainment, Inc., 09-cv-758 (W.D. Wis.). Through a joint motion, the parties consolidated the Morris and Wilcox actions through a Second Amended Complaint. Dkt.33. Leave was granted to file the Second Amended Complaint on February 11, 2010. Dkt.33.

The Plaintiffs' Second Amended Complaint also alleged that AEI violated Wis. Stat. § 103.455 by taking unlawful deductions from technicians' wages. Dkt.35. Further, the Second Amended Complaint defined minimum wage and overtime classes under the FLSA and Wisconsin law for two groups of AEI technicians, Personally Owned Vehicle (POV) and Company Owned Vehicle (COV) technicians. The FLSA collective, or "opt-in," classes for these groups included all technicians allegedly denied overtime and minimum wage payment during the period from

2

April 1, 2007 to present.[1] The Plaintiffs also brought claims on behalf of certain classes under Wisconsin overtime and minimum wage law which claims were made pursuant to Fed. R. Civ. P. 23. Finally, Plaintiffs brought a Fed. R. Civ. P. 23 class claim under Wis. Stat. § 103.455 to recover allegedly unlawful deductions, with an applicable statute of limitations of six years, or beginning December 22, 2003.  AEI has denied and continues to deny any wrongdoing and denies any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted. To avoid the burden, expense, inconvenience, and uncertainty of continued litigation, however, AEI has concluded that it is in its best interests to resolve and settle the litigation by entering into a settlement agreement.

A notice of settlement was filed with the Court on August 10, 2010. Dkt.134. At the time of that filing, the parties had fully briefed the Plaintiffs' Motion for Conditional Class Certification, which remains pending with the Court. Dkt.54, 134. Additionally, at the time the parties filed their Notice of Settlement, the parties had pending before the Court (1) Plaintiff's Motion to Amend the Complaint (Dkt.102), (2) Plaintiff's Motion for Sanctions and Protective Order (Dkt.115), and (3) a Joint Motion to Amend the Scheduling Order (Dkt.133). The settlement reached by the parties resolves the issues addressed by each of these pending motions. With this motion, the Plaintiffs also request leave to file their Third Amended Complaint, as agreed as part of the settlement, which adds Fed. R. Civ. P. 23 classes based on

---

[1] Although the statute of limitations typically runs against an individual until his consent is filed with the court, the parties stipulated to toll the statute of limitations for the Collective Classes effective April 1, 2010. Dkt.33.

alleged unlawful deductions in Michigan, Michigan overtime and minimum wage laws, and additionally adds Thomas Burgess as an individual defendant.

## II.     SETTLEMENT BACKGROUND

Extensive arms length settlement negotiations have taken place in this matter. Said negotiations began six month prior and culminated in the ultimate resolution of the parties' dispute. Declaration of William E. Parsons in Support of Joint Motion for Preliminary Approval of Class Action Settlement and Joint Stipulation for Class Certification ("Parsons Dec.") at ¶2.

The parties first attempted to resolve this matter in Madison, Wisconsin, on April 23, 2010, through a meeting between the parties and their attorneys. Parsons Dec. ¶3. In preparation for said meeting, counsel for AEI disclosed to Plaintiffs' counsel complete time, payroll, and wage deduction data for a randomly chosen group of seventy-five representative technicians. Parsons Dec. ¶4. The data for this group, and for the entire group of POV and COV technicians for a two-year period, was collected by AEI at the request of the United States Department of Labor ("DOL"). (Dkt.53, Transcript of Rule 30(b)(6) Deposition of Lori Reynolds at pp.24, 35-36, 48-49). The DOL approved of AEI's methods in collecting and summarizing this data. (Id. at pp.69-72). In addition to the information provided for the representative sample, Plaintiffs' counsel was provided with the complete payroll information for the entire group of putative overtime and minimum wage class members for a two-year period. Parsons Dec. ¶5. Beyond this, Plaintiffs' counsel was provided with the payroll grids and the payroll adjustment forms (showing

charge backs) for the wage deduction class members. Further, Plaintiffs counsel was provided with all of the charge back authorization forms for the seventy-five representative technicians.  Although the April 23, 2010 meeting between Thomas Burgess, the co-owner of AEI, counsel for AEI, and counsel for the Plaintiffs did not result in a resolution, it allowed the parties to narrow their disputes and better analyze their respective risks in the case. Additionally, in preparation for the meeting, the parties invested substantial resources in calculating damages for 876 minimum wage and overtime putative class members, and 2,120 unlawful deduction putative class members. Parsons Dec. ¶6.

After the parties initial attempts to resolve this dispute without a mediator, they agreed to resume settlement discussions with the benefit of a neutral. Parsons Dec. ¶7. Retired United States District Court Judge Richard McQuade, Jr. agreed to mediate this dispute, and a formal mediation took place on August 6, 2010. Parsons Dec. ¶8. In preparation for the mediation, counsel for the Plaintiffs prepared more than 50 pages of mediation briefing, in addition to an extensive analysis of damages based on multiple potential damages models. Parsons Dec. ¶9. Plaintiffs' counsel alone spent over approximately 100 hours in preparation for the mediation. Parsons Dec. ¶10. At mediation, the parties engaged in day-long negotiations and finally were able to reach a mutual agreement and ultimately memorialized the settlement agreement attached as Exhibit 1 to the Joint Motion for Preliminary Approval of Class Action Settlement and Joint Stipulation for Class Certification ("Joint Motion").

III.    **THE SETTLEMENT AGREEMENT**

The parties' settlement agreement is attached as Exhibit 1 to the Joint Motion. The terms of the agreement are set forth therein, and are summarized below.[2]

A.    <u>**The Settlement Classes**</u>

The Plaintiffs seek leave to file their Third Amended Complaint with this motion for Preliminary Settlement Approval. That complaint defines the following classes, which will be referred to collectively as the Settlement Classes.

- The "Michigan Deduction Class" means any and all persons employed by the Company in Michigan as a technician at any time during the period of October 29, 2006 through and including August 6, 2010.

- The "Michigan Overtime/Minimum Wage Class" means any and all persons employed by the Company in Michigan as a COV or POV technician at any time during the period of October 29, 2006 through and including August 6, 2010.

- The "Wisconsin Deduction Class," means any and all persons employed by the Company in Wisconsin as a technician at any time during the period of December 22, 2003 through and including August 6, 2010.

- "Wisconsin Overtime/Minimum Wage Class" means any and all persons employed by the Company in Wisconsin as a COV or POV

---

[2] The terms of the Settlement Agreement take precedent over any summary or other statements in this Motion.

technician at any time during the period of October 29, 2006 through and including August 6, 2010.

- The "Opt-In Class" means any and all current or former COV or POV technicians employed by the Company at any time during the period of October 29, 2006 through and including August 6, 2010 who is also a Class Representative or who filed an opt-in notice with the Court on or before the Execution Date of the Settlement Agreement, or who timely opts into the Civil Action and the settlement by timely signing and returning a Settlement Claim Form and Release of Claims, as provided in ¶3.2(D) of the Settlement Agreement.

### B. <u>Allocation to the Settlement Classes</u>

The Settlement Agreement provides that Defendants will pay up to $2,330,000.00 (the "Maximum Settlement Amount") in settlement, and the employer's share of applicable payroll taxes. The Maximum Settlement Amount includes payment for any and all of Plaintiffs' approved attorneys' fees and costs and all Class Representative service payments. Plaintiffs and Class Counsel shall not seek more than one-third of the Maximum Settlement Amount for all attorneys' fees and costs. With regard to the costs and fees of the Claims Administrator, the first $40,000 in such costs and fees will be paid by the Company from the Maximum Settlement Amount. Class Counsel will be solely responsible for all such costs and fees in excess of $40,000.

The value of each settlement claim will be calculated for every individual who returns a timely, executed, claim form in accordance with the Settlement Agreement.  The formula used to calculate the amount to be paid to each potential Wisconsin and Michigan Overtime/Minimum Wage Claimant is as follows:

After reducing the Maximum Settlement Amount by the amount awarded by the Court for Plaintiffs' attorneys' fees and costs, and for Class Representative service payments as set forth in ¶2.16 of the Settlement Agreement, the remaining amount shall be allocated i) one-third to the Wisconsin and Michigan Deduction Classes (the "One-Third Amount") and ii) two-thirds to the Wisconsin and Michigan Overtime/Minimum Wage Classes (the "Two-Thirds Amount").  The "Adjusted Total Work Weeks" for all Wisconsin and Michigan Overtime/Minimum Wage Class Members during the relevant time period shall be determined first by adding together all weeks actually worked as COVs and POVs by all Wisconsin and Michigan Overtime/Minimum Wage Class Members.  To that sum shall be added an additional number of weeks equal to 12.5% of the total weeks worked as POVs by all Wisconsin and Michigan Overtime/Minimum Wage Class Members during the relevant time period.  The resulting sum of Adjusted Total Work Weeks shall then be divided into the Two-Thirds Amount, resulting in an "Average Weekly Wage Claim Amount."  Defense Counsel and Class Counsel shall submit to the Claims Administrator the Average Weekly Wage Claim Amount.  The individual amount to be paid to each Wisconsin and Michigan Overtime/Minimum Wage Claimant for weeks worked as a COV shall be calculated by multiplying the Average Weekly

Wage Claim Amount by the actual number of workweeks worked by each particular Wisconsin and Michigan Overtime/Minimum Wage Claimant as a COV during the relevant time period.  The individual amount to be paid to each Wisconsin and Michigan Overtime/Minimum Wage Claimant for weeks worked as a POV shall be calculated first by adjusting upward by 12.5% the actual number of workweeks worked as a POV by each particular Wisconsin and Michigan Overtime/Minimum Wage Claimant.  Second, the adjusted total POV workweeks for that Claimant shall then be multiplied by the Average Weekly Claim amount, yielding the individual amount to be paid to each Wisconsin and Michigan Overtime/Minimum Wage Claimant for weeks worked as a POV.  The actual workweeks of the first ten individual Class Members who opt out of the settlement in accordance with Section 3.2(C) shall be included in the calculating the Adjusted Total Work Weeks; but workweeks of Class Members who opt out of the settlement in accordance with Section 3.2(C), beyond the initial ten noted above, shall be excluded when calculating the Adjusted Total Work Weeks.

The formulas used to calculate the amount to be paid to each potential Wisconsin and Michigan Deduction Claimant is as follows: After reducing the Maximum Settlement Amount by the amount awarded by the Court for Plaintiffs' attorneys' fees and costs, and for Class Representative service payments as set forth in ¶2.16, the remaining amount shall be allocated i) one-third to the Wisconsin and Michigan Deduction Classes (the "One-Third Amount") and ii) two-thirds to the Wisconsin and Michigan Overtime/Minimum Wage Classes (the "Two-Thirds

Amount"). The total actual workweeks worked as a technician by all Wisconsin and Michigan Deduction Class Members during the relevant time period shall be divided into the One-Third Amount, resulting in an "Average Weekly Deduction Claim Amount." The actual workweeks of the first ten individual Class Members who opt out of the settlement in accordance with Section 3.2(C) shall be included in determining the total actual workweeks worked as a technician by all Wisconsin and Michigan Deduction Class Members; but workweeks of Class Members who opt out of the settlement in accordance with Section 3.2(C), beyond the initial ten noted above, shall be excluded. Defense Counsel and Class Counsel shall submit to Claims Administrator the Average Weekly Deduction Claim Amount. The individual amount to be paid to each Wisconsin or Michigan Deduction Claimant shall be calculated by multiplying the Average Weekly Deduction Claim Amount by the actual number of workweeks that Wisconsin or Michigan Deduction Claimant was employed during the relevant time period.

<u>Settlement Administration and Notices</u>

The parties have agreed to use Rust Consulting, Inc. (hereinafter "Rust") as the Settlement Claims Administrator. With regard to the costs and fees of the Claims Administrator, the first $40,000 in such costs and fees will be paid by the Company from the Maximum Settlement Amount ($2,330,000). Class Counsel will be solely responsible for all such costs and fees in excess of $40,000.

Rust will mail, via First Class United States mail, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (in the form attached as

Exhibit E to the Settlement Agreement), and the Settlement Claim Form and
Release of Claims (attached as Exhibit F to the Settlement Agreement) to all Class
Members using each individual's most accurate address.  To determine each
individual's most accurate address, before the mailing, the Claims Administrator
will run all of the addresses provided by Defendants' Counsel through NCOA.  In
addition, if any notices are returned to the Claims Administrator as "undeliverable"
or "address unknown," then the Claims Administrator will use a skip trace.  If an
updated address is generated by the skip trace, then the Claims Administrator will
resend the Notice of Proposed Settlement of Class Action Lawsuit and Fairness
Hearing (in the form attached as Exhibit E to the Settlement Agreement), and the
Settlement Claim Form and Release of Claims (attached as Exhibit F to the
Settlement Agreement) using that updated address.

The notice and claim forms, as set forth below, will be posted on the internet
at www.aeiclassaction.com.  Class Counsel will bear the cost of the creation and
maintenance of this website.  The website will contain an announcement identical
as set forth below, the Notice of Proposed Settlement of Class Action Lawsuit and
Fairness Hearing (in the form attached as Exhibit E), and the Settlement Claim
Form and Release of Claims (attached as Exhibit F).  The notice and claims forms
will be available for downloading and printing from the website.  All claim forms
must be filed with the Claims Administrator and may not be filed through the
website.

11

Class Counsel will also select six regional newspapers of its choice from Wisconsin and/or Michigan in which to publish a legal notice of this settlement. Such notice will be published only in the section of that newspaper where legal notices are typically published, and the notice will appear in the same font, font size, etc. as is used by that newspaper for its standard legal notices. The notice will state:

> To current and former technicians of Alternative Entertainment, Inc.: If you were employed in Michigan by Alternative Entertainment, Inc. as a Technician at any time between October 29, 2006 and August 6, 2010 or, if you were employed in Wisconsin by Alternative Entertainment, Inc. as a Technician at any time between December 22, 2003 and August 6, 2010, then you may be entitled to a substantial payment of additional wages from the Company. For further information contact Rust Consulting, Inc. at (800)999-7940, or visit www.aeiclassaction.com.

The parties have agreed on the form of the notice, and claim form, and those notices are attached as Exhibits E and F to the Settlement Agreement filed as Exhibit 1 to the Joint Motion.

## C.   **Payments of Class Representatives**

The named Plaintiffs for the Wisconsin classes, Richard Morris and Richard Wilcox, have contributed substantial time and work in securing a settlement on behalf of the classes they represent. Parsons Dec. ¶11. The Michigan Named Plaintiff, Dewey Stevenson, has provided counsel with the information necessary to assert minimum wage, overtime, and unlawful deduction claims on behalf of the Michigan technicians. In recognition of these efforts, the parties have agreed to pay

the following enhancement payments to these individuals: $15,000 to Richard Wilcox; $8,000 to Richard Morris; and $2,000 to Dewey Stevenson.

The participation of Richard Morris and Richard Wilcox was more extensive than Mr. Stevenson, and these individuals have been awarded greater amounts for their participation. Richard Wilcox was the first Plaintiff to initiate a claim against AEI, and he provided Plaintiffs' counsel with the information and documentation of the alleged violations, which ultimately contributed to the class settlement. Richard Morris similarly supplied counsel with the information regarding the unlawful deduction component of this claim, which also contributed to a successful resolution of this matter. While Dewey Stevenson's efforts did not match those of Richard Morris or Richard Wilcox, his participation allowed for the procurement of a settlement for three classes of Michigan employees. These employees may have otherwise not been afforded an opportunity to participate in this settlement.

### D.    Attorney's Fees and Costs

Contemporaneously with the filing of this motion, Class counsel has filed its application for attorneys' fees and costs. Class counsel has applied for an award of one-third or 33.33 percent of the Maximum Settlement Amount.

### E.    Other Provisions in the Settlement Agreement

In addition to the above-described settlement terms, the parties have agreed to the following terms. The claims procedure will be anonymous in order to encourage participation and reduce the fear of retribution for Settlement Class members. AEI, its officers, directors, shareholders and management personnel shall

13

not discuss with any Settlement Class member settlement of the lawsuit, participation in the settlement or the claims process, or the effect of the settlement on AEI or its employees. If contacted by any current or former member of the Settlement Class concerning the above, AEI has agreed to respond "no comment." The parties request that the Court retain jurisdiction to enforce this provision during the pendency of the claims period. Finally, Thomas Burgess has agreed to work exclusively out of the corporate office during the 60-day claims period. See Exhibit 1 to Joint Motion.

## IV.    PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE

### A.    The Criteria for Preliminary Approval Have Been Satisfied

Resolution of class action litigation by settlement is favored by the federal courts. Isby v. Bayh, 75 F.3d 1191, 1996 (7th Cir. 1996). An FLSA settlement requires court approval in order to be valid and enforceable. Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986). Employees can only bargain, waive, or modify their right to recovery if the parties agree to the terms of the settlement and the court approves the settlement as a fair and reasonable resolution of the bona fide dispute over FLSA provisions, and the settlement is entered as a stipulated judgment. Lynn's Food Store, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982).

Similarly, a Fed. R. Civ. P. Rule 23(b)(3) class action may only be approved if (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court

14

finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. United Founders Life Ins. Co. v. Consumers National Life Ins. Co., 447 F.2d 647, 655 (7th Cir. 1971)(internal quotations omitted). Other factors considered are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery complete; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

Preliminary approval of a class action settlement allows members of the Settlement Class to receive notice of the proposed settlement terms and the date and time for the fairness hearing at which members of the Settlement Class may be heard and which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement Agreement may be presented. See Manual for Complex Litigation at §§ 13.14, 21.632.

## 1.   The Proposed Settlement Is Fair, Reasonable and Adequate

The Settlement agreement outlined above is fair and reasonable for the parties. Real disputes exist between the parties as to whether liability exists in this case and, if liability were proven, the extent of the Plaintiffs' damages. Defendant

has asserted various Fair Labor Standards Act exemptions as possible defenses to this action. Although the Plaintiffs believe that such defenses are inapplicable in the instant matter, it is nevertheless a considerable factor in resolving this claim. Further, Defendant has raised arguments regarding whether the Plaintiffs' multiple proposed classes could satisfy the requirements of Fed. R. Civ. P. 23 and 29 USC § 216(b). In light of these risks, and the costs of fully litigating these issues, the parties feel that the overall settlement is reasonable and fair for all class members.

### 2. The Settlement Was Reached Through Arm's-Length Negotiations

As is discussed above, this settlement comes as the result of a nearly six month long negotiation process which culminated in mediation before a retired United States District Court judge. These negations were conducted at arm's length throughout, and were conducted by a group of attorneys experienced in complex wage and hour litigation. McQuade Dec. ¶8; Parsons Dec. ¶12. The Plaintiffs were represented by three law firms with hundreds of combined years of experience representing classes in similar matters in this Court. Parsons Dec. ¶13. Class counsel certifies that the Settlement Agreement resulting from these negations was reached at arm's length and is one that is fair and reasonable to members of the Settlement Class. Parsons Dec. ¶14.

 3. **The Maximum Settlement Amount Provides Adequate Relief for the Settlement Classes and the Proposed Allocation Method Equitably Divides the Settlement Funds**

The Maximum Settlement Amount provides relief for the alleged unpaid minimum wages, alleged unpaid overtime wages, and alleged unlawful deductions taken by AEI. The parties have agreed on a reasonable and equitable manner of dividing the Maximum Settlement Amount amongst these categories of damages. Considering the claim value and relative likelihood of success on the merits of each claim, the parties allocated two-thirds of the Maximum Settlement Amount to unpaid overtime and minimum wage damages, and associated liquidated damages. The remaining one-third is allocated for repayment of alleged unlawful deductions and liquidated damages associated with that claim. In order to fairly divide the settlement funds amongst all class members, the funds have been divided on a *pro rata* basis, which considers the total value of every individual claim relative to the claim of the entire Settlement Class.

For the above-stated reasons, the parties believe that the Settlement Agreement represents a fair, reasonable, and adequate resolution of the parties' disputes, reached at arm's length, and respectfully request that the Court preliminarily approve the settlement.

## V. THE PARTIES FED. R. CIV. P 23 CLASSES SHOULD BE CERTIFIED FOR PURPOSES OF SETTLEMENT

In addition to FLSA collective classes, the Plaintiffs' Third Amended Complaint identifies putative Fed. R. Civ. P. 23 classes, under Wisconsin and

Michigan law, based on the Plaintiffs' allegations of unpaid overtime wages, minimum wages, and unlawful deductions.

### A.   Plaintiffs Have Satisfied this Court's Implicit Standards

In addition to the Fed. R. Civ. P. 23(a) and 23(b) standards, this Court requires that its implicit standards for certification are met. The proposed class definition must be definite, that is, ascertainable, precise and objective. Blihovde v. St. Croix, 219 F.R.D. 607, 614 (W.D. Wis. 2003, Crabb, J.). The named Plaintiffs must also be members of the classes they represent.

The members of the Plaintiffs' proposed classes are definite. The parties have identified these individuals and have calculated their damages. The definitions do not include any subjective criteria, but include all technicians who were not paid overtime, who were not paid minimum wages, or who had deductions taken from their pay.

The three individuals representing these classes are members of the classes they represent. Richard Wilcox worked as a POV technician in Wisconsin and alleges he was denied minimum and overtime wages. Richard Morris worked as a COV technician in Wisconsin and alleges he was denied minimum and overtime wages and had deductions taken from his wages. Dewey Stevenson worked as both a POV and COV technician in Michigan and alleges he was denied payment of overtime wages, minimum wages, and had deductions taken from his wages.

18

### B.  Plaintiffs Have Satisfied the Fed. R. Civ. P. 23(a) Standards

#### 1.  Plaintiffs' Proposed Classes Are Numerous

This Court has stated that the numerosity requirement of Fed. R. Civ. P. 23(a) requires a "showing that the number of members in the proposed class is so large as to make joinder impracticable. <u>Carnegie v. Household Int'l, Inc.</u>, 376 F.3d 656, 663-4 (7th Cir. 2004). Meeting this requirement takes only a good faith non-speculative estimate of the size of the proposed class. <u>Anderson v. Capital One Bank</u>, 224 F.R.D. 444 (W.D. Wis. 2004, Crabb, J.). Plaintiff has made this required showing.

Based on information provided by Defendant, the Wisconsin Minimum Wage and Overtime Classes contain 876 members. The Wisconsin Unlawful Deductions Class contains 1,426 members, and the Michigan Unlawful Deductions Class contains 668 members. Parsons Dec. ¶15.

#### 2.  There Are Questions of Law and Fact Common to the Class

The commonality requirement of Rule 23(a)(2) is highly permissive. <u>Blihovde v. St. Croix County, Wis.</u>, 219 F.R.D. 607, 616 (W.D. Wis. 2003, Crabb J.). A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992). The fact that there is some factual variation among the class grievances will not defeat a class action. <u>Id.</u>

The Plaintiff's Third Amended Complaint alleges the following questions of law and fact sufficient to meet the 23(a)(2) standard. These common questions include:

(a) Whether Alternative Entertainment unlawfully failed to pay overtime compensation in violation of and within the meaning of Wisconsin Statute § 103.03, and Wisconsin Administrative Code § DWD 274.03 and Mich. Comp. Laws § 408.394;

(b) The nature and amount of compensable work performed by the Named Plaintiffs and members of the putative Wisconsin and Michigan Overtime Classes;

(c) Whether the Named Plaintiffs and members of the putative Wisconsin and Michigan Overtime Classes are exempt from overtime compensation under Wisconsin or Michigan law;

(d) Whether Alternative Entertainment employed the Named Plaintiffs and members of the putative Wisconsin and Michigan Overtime Classes within the meaning of Wisconsin or Michigan law;

(e) The proper measure of damages sustained by the Wisconsin and Michigan Overtime Classes.

(f) Whether Alternative Entertainment unlawfully failed to pay minimum wage compensation in violation of and within the meaning of Wisconsin Statute § 104.01(3) and Mich. Comp. Laws § 408.393;

(g) The nature and amount of compensable work performed by the Named Plaintiffs and members of

the putative Wisconsin and Michigan Minimum
Wage Classes;

(h)     Whether Alternative Entertainment employed the
Named Plaintiffs and members of the Wisconsin
and Michigan Minimum Wage Classes within the
meaning of Wisconsin or Michigan law;

(i)     The proper measure of damages sustained by the
Wisconsin and Michigan Minimum Wage Classes;

(j)     Whether Alternative Entertainment deducted, or
charged back, wages from the Plaintiffs and
putative class members for alleged defective or
faulty workmanship, lost or stolen property or
damage to property;

(k)     Whether the Plaintiffs or putative class members
provided valid authorizations to Alternative
Entertainment to make deductions;

(l)     The proper measure of damages sustained by the
Wisconsin Unlawful Deduction Class and the
Michigan Unlawful Deduction Class.

Defendants do not dispute for purposes of settlement only, that several

common questions of fact and law exist, including:

1.     Whether Plaintiffs were exempt from overtime
requirements.

2.     Whether Alternative Information policy properly
paid Plaintiffs overtime for hours worked over 40 in
a workweek.

3.     Whether Alternative Entertainment had
knowledge that Plaintiffs worked over 40 hours in a
workweek.

The common questions of law and fact, as alleged in Plaintiffs' Third Amended Complaint are sufficient to meet the Fed. R. Civ. P. 23(a)(2) standard as they arise from a common nucleus of operative fact, namely the two pay policies being challenged in this matter; Defendants' alleged uniform policy of paying technicians on a per job basis without additional compensation for hours worked over forty (40) a week and Defendant's policy of taking deductions from employees wages.

### 3.   The Named Plaintiffs' Claims Are Typical of the Putative Class Members

The typicality requirement is closely related to the question of commonality. Rosario, at 1018. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory. De La Fuente v. Stokley-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir.1983). The commonality and typicality requirements serve to ensure that only those plaintiffs … who can advance the same factual and legal arguments may be grouped together as a class. Mace v. Van Ru Credit Corp., 109 F. 3d 338, 341 (7th Cir. 1997). The typicality requirement, however, focuses only on whether the plaintiff's claim is based on the same legal theory and arises from the same course of conduct that gives rise to the claims of the other members of the proposed class. Rosario, at 1018. Typicality focuses on the defendant's actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996).

Each of the Named Plaintiffs is a member of the classes they seek to represent. The legal theories advanced by the Named Plaintiffs, to wit – that AEI maintained a uniform, and illegal, pay policy which denied them minimum wages and overtime wages – apply equally to the Named Plaintiffs and the members of the classes they seek to represent. Similarly, Plaintiffs contend that questions regarding whether AEI's manner of deducting wages from technicians in Michigan and Wisconsin violated the laws of those states are common to, and typical of, the Named Plaintiffs and the classes they seek to represent. Because Plaintiffs contend their claims involve the same legal theories and arise from the same course of conduct that gives rise to the claims of the putative class members, and Defendants do not dispute for purposes of settlement, the typicality element has been satisfied.

### 4.   The Named Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately Protect the Interests of the Class

The final inquiry under Rule 23(a) consists of two parts: (1) the adequacy of the Named Plaintiff's counsel; and (2) the adequacy of representation provided in protecting the different, separate and distinct interests of the class members. Retired Chicago Police Association v. Chicago, 7 F.3d 584, 598 (7th Cir. 1993) (quoting Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986) (en banc)).

The putative classes are represented by three law firms, which collectively have hundreds of years of experience representing plaintiffs in employment disputes, class action disputes, and wage and hour cases in this Court. Parsons Dec. ¶16.

Further, the Named Plaintiffs do not have any antagonistic or conflicting interests with the classes they seek to represent. The Plaintiffs allege they have been injured by the same policies as the classes they seek to represent and seek compensation on their on behalf and on behalf of the classes they represent for those injuries.

The Plaintiffs have thus satisfied the requirements of Fed. R. Civ. P. 23(a).

C.   **Plaintiffs Have Satisfied the Fed. R. Civ. P. 23(b) Standards**

In addition to meeting the Fed. R. Civ. P. 23(a) standards, the Plaintiffs must satisfy one of the Fed. R. Civ. P. 23(b) standards. Where, as is the case in this matter, the Plaintiffs seeks monetary damages, the inquiry properly focuses on Fed. R Civ. P. 23(b)(3). Blihovde, 219 F.R.D. at 619.

Under Fed. R. Civ. P. 23(b)(3), certification of the class is proper where questions of law or fact common to the entire class predominate over individual claims and a class action is superior to other methods for fair and efficient adjudication. Fed. R. Civ. P. 23(b). The Seventh Circuit has summarized this standard by stating that, "class action treatment is appropriate and permitted by Rule 23 when judicial economy from the consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for a decision by a single judge or jury." Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910, 911 (7th Cir. 2003).

24

### 1.     Common Questions of Law or Fact Predominate

The question to be answered here is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. Bilhovde, 219 F.R.D. at 620 (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997)). When challenging a uniform policy, the validity of those policies predominate over individual issues and class certification is appropriate. Id. (citing General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 147 n. 20 (1982)). Differences in damages between individual class members will not defeat class certification. Id. at 621. Further, where a uniform policy is challenged, individual inquires into the application of that policy to an individual within the class will not supplant predominance. Id.

Through this settlement, the parties have resolved disputes regarding two policies maintained by Defendant, which Plaintiffs alleged violated the law. First, Plaintiffs alleged that Defendant's manner of compensating their technicians, on a per job basis, without additional compensation for hours worked over forty (40), violated the minimum wage and overtime provisions of Wisconsin and Michigan law. Second, Plaintiffs allege that Defendant's policy of deducting wages from technicians' pay without proper written authorization to do so violates Wisconsin and Michigan law. Because these policies were uniformly enforced against the members of each of these classes, and because this settlement resolves the parties' disputes about these policies, the Plaintiffs believe that, and Defendant does not

dispute for purposes of this motion, common issues do predominate in this matter, and that the Fed. R. Civ. P. 23(b)(3) standards have been met.

### 2.   A Class Action Is Superior to Other Available Methods for Fairly and Efficiently Adjudicating this Controversy

The final Fed. R. Civ. P. 23(b)(3) requirement, superiority, has also been met In evaluating superiority, the Court considers (1) the interests of the class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of concentrating the claims in one forum; and (4) the difficulty of managing the class. Fed. R. Civ. P. 23(b)(3).

Plaintiffs are not aware of any other pending litigation regarding this controversy, the two actions alleging violations against Defendant have been consolidated and are resolved through this action. Plaintiffs' counsel is aware of a DOL investigation which was discontinued by the DOL shortly after Plaintiffs initiated this lawsuit.  Plaintiffs' counsel has apprised the DOL of the settlement reached in this matter.

The desirability of a class in this case is readily apparent by the size of the classes represented and by the nature of the alleged violations. These challenged policies affected each member of the putative classes, however, the putative class members' individual interest in prosecuting these claims, in many cases, is small given the relatively small monetary value of each individual's claim. To the extent that any member of the class would prefer to litigate his claim separately, the class mechanism will provide him an opportunity to opt out of the class and do so.

Because a class is a superior method for resolving this dispute, the parties stipulate and request for purposes of settlement that this Fed. R. Civ. P. 23 class be certified.

### D. The Proposed Notice and Manner of Service Are Appropriate

In order to protect the rights of absent members of a settlement class, the Court must provide the best notice practicable to all members. Phillips v. Carlisle & Jacquelin, 417 US 156, 174-5 (1985). Such a notice should define the class, describe clearly the options open to the class members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorney's fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the class members to calculate individual recoveries, and prominently display the address and telephone number of class counsel and the procedure for making inquires. Manual for Complex Litigation at § 21.312.

The notices attached to the parties Settlement Agreement as Exhibits E and F accomplish each of the above criteria. The Settlement Administrator will make all efforts to contact all putative class members to ensure class members are aware of and able to participate in the settlement or to opt out if they so choose.

### CONCLUSION

For the above stated reasons, the parties request that the Court accept their stipulation to certify the Plaintiffs' Fed. R. Civ. P. 23 classes for purposes of settlement only. Further, because the settlement represents a fair and reasonable

27

resolution of the parties' disputes and because preliminary approval is the preferred

method of administering such a settlement, the parties respectfully request that the

Court grant the parties' Motion for Preliminary Approval.


Respectfully submitted this 5th day of October 2010.


**HAWKS QUINDEL, S.C.**
*Attorneys for Plaintiffs*


By:___*/s/ William E. Parsons*___
     William E. Parsons
     Email: wparsons@hq-law.com
     David C. Zoeller
     Email: dzoeller@hq-law.com
     222 W. Washington Ave., Ste. 450
     P.O. Box 2155
     Madison, WI 53701-2155
     Telephone: 608/257-0040
     Facsimile: 608/256-0236


**LIEBMANN, CONWAY,
OLEJNICZAK & JERRY, S.C.**
*Attorneys for Defendant*


By:___*/s/ Ross W. Townsend*___
     Ross W. Townsend
     Email:  rwt@lcojlaw.com
     Kurt A. Goehre
     Email:  kag@lcojlaw.com
     231 S. Adams St.
     P.O. Box 23200
     Green Bay, WI 54305-3200
     Telephone: 920/437-0476
     Facsimile:  920/437-2868


**AXLEY BRYNELSON, LLP**
*Attorneys for Plaintiffs*


By:___*/s/ Michael J. Modl*___
     Michael J. Modl
     Email: mmodl@axley.com
     Timothy D. Edwards
     Email: tedwards@axley.com
     P.O. Box 1767
     Madison, WI  53701-1767
     Telephone:  608/257-5661
     Facsimile: 608/257-5444


**SQUIRE, SANDERS &
DEMPSEY, LLP**
*Attorneys for Defendant*


By:___*/s/ Jill S. Kirila*___
     Jill S. Kirila
     Email: jkirila@ssd.com
     2000 Huntington Center
     41 S. High St.
     Columbus, OH  43215
     Telephone:  614/365-2772
     Facsimile: 614/365-2499

**GINGRAS, CATES & LUEBKE**
*Attorneys for Plaintiffs*


By:_____*/s/ Robert J. Gingras*_____
   Robert J. Gingras
   Email: gingras@gcllawyers.com
   Heath P. Straka
   Email: straka@gcllawyers.com
   8150 Excelsior Dr.
   Madison, WI  53717-1904
   Telephone: 608/833-2632
   Facsimile: 608/833-2874